AO 108 (Rev. 06/09) Application for a Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT
for the
District of South Carolina

| | |
|---|---|
| In the Matter of the Seizure of<br>*(Briefly describe the property to be seized)*<br>South State Bank Account 8010000316027 | )<br>)<br>)   Case No.   2:18-cr-00804<br>)<br>) |

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the _____ District of ___South Carolina___ is subject to forfeiture to the United States of America under ___18___ U.S.C. § ___981(a)(1)(C)___ *(describe the property)*:

Up to $175,000.00 in South State Bank Account 8010000316027

The application is based on these facts:

see attached affidavit

☑ Continued on the attached sheet.

*(signature)*
_____
*Applicant's signature*

Brian Womble, SA FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: August 17, 2018

_____
*Judge's signature*

City and state: Charleston, SC

Hon. Mary Gordon Baker, US Magistrate Judge
*Printed name and title*

I, Brian S. Womble, Federal Bureau of Investigation, being first duly sworn, hereby depose and state as follows:

1. I am a Special Agent with the Federal Bureau of Investigation (FBI), and as such I am an "investigative or law enforcement officer" of the United States within the meaning of Section 2510 (7) of Title 18, United States Code and am empowered by law to conduct investigations and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

2. I have been employed as a Special Agent (SA) of the FBI since July 1999. I have been assigned investigative responsibility in the areas of public corruption, civil rights, white collar crime, and computer crime in the Columbia Division, Charleston Resident Agency, of the FBI. Prior to my appointment as a Special Agent, I was employed as an Infantry Officer in the United States Marine Corps for approximately four (4) years. This affidavit is intended to show only that there is sufficient evidence for the requested warrant and does not set forth all of my knowledge about this matter.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient evidence for the requested warrant and does not set forth all of my knowledge about this matter.

4. In 2013, Todd VANNATTA pled guilty in Indiana to federal bank and wire fraud charges. He was sentenced to five years imprisonment. There is an outstanding restitution order for $6,978,970.22. VANNATTA is currently under supervision for this offense in the District of South Carolina.

5. The FBI received multiple complaints about VANNATTA'S activity upon being released from federal prison. The US Probation Department became concerned about where VANNATTA was living and how he was paying for a residence on Isle of Palms, South Carolina. Based on this referral, agents investigated VANNATTA further.

6. When agents looked into VANNATTA current activities they identified several different schemes he was involved with. VANNATTA ran Brokers Exchange, a business that purchases shipping containers and the contents, and then sells off the contents in various ways, hoping to make a profit in the process. An analysis of Brokers Exchange business and bank records indicate that VANNATTA is largely in control of Brokers Exchange.

7. "R.B." reported meeting VANNATTA on July 16, 2016. VANNATTA solicited R.B. to invest in a shipment of salvaged goods reportedly consisting of various goods including medical equipment. VANNATTA provided R.B. with a 75 page manifest of goods in the shipment reflecting a retail value of $736,111.70. He also provided her a cost analysis that listed an expected profit of $247,250.00 and included sales estimates and other costs. VANNATTA represented to R.B. that



the cost of the load was $94,811.19, which included shipping and storage costs. Bank records would later show that Brokers Exchange purchased the goods for a total of $20,436.52 on April 28, 2016.

8. VANNATTA told R.B. that he would be a silent partner and purchase a percentage of the load for $38,000.00, which R.B. relied upon in deciding to make her investment. That left R.B. with an investment of $61,061.19 (this amount, combined with VANNATTA's $38,000.00, plus shipping and storage costs, equaled the represented cost of the load). When later questioned about this, Brokers Exchange registered owner Nancy Jordan said that VANNATTA's $38,000.00 investment did not occur. VANNATTA asked that R.B. write him a check for her $61,061.19 investment so that he could verify she had funds in her account, and R.B. gave VANNATTA a check in this amount on July 18, 2017.

9. R.B. received an invoice from Brokers Exchange indicating that she had purchased part of a load and VANNATTA had purchased part. The invoice indicated that VANNATTA was paying his $38,000.00 part of the investment, which was not true.

10. On August 27, 2017, R.B. emailed VANNATTA since she had not heard from him and asked for her money back. On August 29, 2017 VANNATTA told R.B. that she had abandoned her role, there were no sales and that she broke the deal and she would have to take responsibility for her portion of the physical goods that were being physically stored by Brokers Exchange.

11. An analysis of Brokers Exchange bank accounts shows the deposit of R.B.'s money, however, there is no record indicating VANNATTA invested $38,000.00. In a civil deposition, VANNATTA said he never paid the $38,000.00.

12. VANNATTA, going under the name Todd Alan, devised an additional scheme, separate from the scheme involving R.B., whereby he used Brokers Exchange to purchase a shipment of 90,000 pairs of salvaged shoes and induced individuals to invest in the shipment with the false promise of high returns. All funds were transferred to Brokers Exchange bank accounts. Many individuals reported investing money with VANNATTA, only to never have the money returned or see any profit.

13. The Ohio Dept. of Commerce and the FBI interviewed 15 potential victims of this scheme. The total losses to interviewed victims is $415,000.00, with another $268,000.00 to victims who were not interviewed. The $268,000.00 amount was determined by reviewing bank records, and identifying transactions that were consistent with the fraud reported by interviewed individuals.

14. Brokers Exchange was using a single bank account to deposit fraudulent proceeds, in excess of $175,000.00. That account closed in December, 2017, and $175,000.00 was transferred from this account to the TARGET ACCOUNT located at South State Bank, Account No. 8010000316027.



15. In August 2017 Channel Remarketing LLC was registered with the South Carolina Secretary of State. Registered Agent Nancy Jordan stated Channel Remarketing was opened to redefine and refocus the Brokers Exchange business. The Brokers Exchange business continued as Channel Remarketing. At the time of the change, Brokers Exchange was named in multiple civil fraud complaints. Brokers Exchange funds were transferred into the TARGET ACCOUNT located at South State Bank, Account No. 8010000316027, listed under Channel Remarketing, in an initial amount of $175,000.00.

16. The Channel Remarketing account has been used to conduct business including the purchase of salvaged goods and a flying company that gives tours and provides advertising. The account has had a large volume of money moving through it – in 2018 the account averaged $104,000 in credits per month and $115,000.00 in debits per month. The account total as of July 31, 2018 was $47,054.76. The initial $175,000.00 from the Brokers Exchange account was commingled with these funds.

17. On August 15, 2018, VANNATTA was indicted by a federal grand jury for seven counts of wire fraud, 18 U.S.C. § 1343, related to the above conduct. See Exhibit 1 (Indictment).

18. Based on this information I believe probable cause exists that South State Bank, Account No. 8010000316027, listed under Channel Remarketing, contain monies, funds or other assets derived wholly or in part from Wire Fraud, 18 U.S.C. § 1343.

19. I submit that there is probable cause to believe that the funds in the TARGET ACCOUNT listed below is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), and that a seizure warrant for the funds may be issued pursuant to 21 U.S.C. 853(f) (governing issuance of criminal seizure warrants) and 18 U.S.C. § 981(b) (governing issuance of civil seizure warrants).

    a. 18 U.S.C. § 981(a)(1)(C) allows for the civil forfeiture of the proceeds of property derived from a list of specific criminal offenses, which include "specified unlawful activities" listed in 18 U.S.C. §§ 1956(c)(7), 1961(1), which includes violations of 18 U.S.C. § 1343.
    b. 21 U.S.C. § 853(e), although located in the Controlled Substances Act, sets forth forfeiture procedures. 28 U.S.C. § 2461(c) makes the procedures of 21 U.S.C. § 853 applicable to criminal charges for which there is civil or criminal forfeiture available. Because wire fraud has a civil forfeiture provision in 18 U.S.C. 981(a)(1)(C), 28 U.S.C. § 2461 provides that the procedures set forth in 21 U.S.C. § 853 apply to such a forfeiture in the criminal, as opposed to civil, context.

20. 18 U.S.C. § 984 allows for the seizure of commingled funds in a bank account within one year of the offense. See United States v. U.S. Currency Deposited in



Account No. 1115000763247 for Active Trade Co., Located at First Nat. Bank, Chicago, Ill., 176 F.3d 941 (7th Cir. 1999). Here, fraudulent proceeds from the Brokers Exchange account were deposited into the Channel Remarketing TARGET ACCOUNT and commingled with other, potentially legitimate, funds. Accordingly, tracing the proceeds, dollar for dollar, in the Channel Remarketing account is not possible. However, seizure of up to $175,000.00 is being requested because this is the amount of commingled proceeds this investigation has revealed. The one-year requirement of 18 U.S.C. § 984 is not a "statute of limitations", but a time frame in which the government can seize commingled funds without having to trace them dollar for dollar. See United States v. $79,650 Seized from . . . Afework, 2009 WL 331294, 4 (E.D. Va. Feb. 9, 2009). Here, the offense has been recently charged, and the $175,000.00 was moved in December 2017, both within a year of this request.

21. Because funds contained in bank accounts can easily be dissipated, and transferred, I submit that a restraining order under 21 U.S.C. § 853(e) would not be sufficient to assure the availability of the funds for forfeiture, and that a seizure warrant is therefore necessary, up to an amount received in the bank accounts of $175,000.00:

**South State Bank Account 8010000316027**

22. I request the court issue a Seizure Warrant for funds in an amount up to $175,000.00 contained in the aforementioned account.

Brian Womble
Special Agent, FBI

Sworn and subscribed before me August 17, 2018.

Hon. Mary Gordon Baker
U.S. Magistrate Judge